IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **AMGUARD INSURANCE COMPANY**<br><br>**Plaintiff(s),**<br><br>v.<br><br>**SEALED UNIT PARTS CO., INC.**<br><br>**Defendant(s).** | **CIVIL ACTION NO:**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Amguard Insurance Corporation, by and through its undersigned counsel, hereby demands judgment against Defendant, and complains against it as follows:

## PARTIES

1. AmGuard Insurance Company (hereinafter "Plaintiff" or "GUARD") is a commercial entity organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 16 South River Street, Wilkes-Barre, PA 18703.

2. At all times relevant hereto, Guard was duly authorized to engage in the businessof insurance in the state of Georgia, and to provide insurance coverage to Khamalai 5169 Lodging, LLC d/b/a Red Roof Inn – Atlanta East ("Plaintiff") in

connection with a business property located at 5400 Fairington Road, Lithonia, GA 30030 ("subject property").

3. At all times relevant hereto, Defendant, Sealed Unit Parts Co., Inc. (hereinafter "SUPCO" of "Defendant") was, upon information and belief, a New York corporation with a primary place of business located at 2230 Landmark Place, Allenwood, New Jersey, which at all times relevant hereto, was duly authorized to engage in business in the State of Georgia, and was engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing and selling ceiling ventilation fans such as the one at issue at the subject property.

## JURISDICTION AND VENUE

4. All preceding allegations are incorporated herein by reference as though set forth at length.

5. Pursuant to 28 U.S.C. § 1332, subject matter exists because Guard and Sealed Unit Parts Co., Inc. are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

6. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## **STATEMENT OF FACTS**

7. Prior to July 27, 2020, Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce exhaust/ventilation fans with accompanying component parts, said product being intended for use by consumers for the ordinary purpose associated with exhaust/ventilation fans.

8. Prior to July 27, 2020, a bathroom exhaust/ventilation fan (hereinafter the "subject fan"), designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce by Defendant was installed at the subject property.

9. Prior to July 27, 2020, the subject fan was operated without incident in the normal, ordinary and intended matter and purpose.

10. On or about July 2, 2020, a fire originated at the subject fan located in the second floor bathroom at the subject property. The subject fire, and/or heat, smoke and soot therefrom, spread throughout the subject property, thereby causing substantial damage to the subject property.

11. At all times material hereto, the Defendant knew and intended that its exhaust/ventilation fans would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said ventilation fans would be utilized.

12. Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce the aforesaid subject fan, including its component parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction.

13. As a result of the incident, Plaintiff sustained damage to its real and personal property, as well as the imposition of additional expenses and hardship besides, in an amount in excess of $1,000,000.00.

14. The incident and consequent damages were directly and proximately caused by Defendant, as is further and more fully described below.

## COUNT I – STRICT LIABILTY

15. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

16. SUPCO was engaged, in the business of designing, testing, inspecting, assembling, manufacturing and distributing exhaust/ventilation fans and their component parts and specifically designed, tested, inspected, assembled, manufactured, distributed and placed into the stream of commerce the subject fan at issue in this case.

17. The subject fan, which was designed, manufactured, sold and/or distributed into the stream of commerce by SUPCO, was not modified, changed

altered or abused by Plaintiff or other users at the subject property prior to or during its use.

18. SUPCO knew and intended that its exhaust/ventilation fans would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said ventilation fans would be utilized.

19. SUPCO designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the aforesaid subject fan, including its component parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction.

20. SUPCO designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the aforesaid subject fan in a defective condition, unreasonably dangerous to Plaintiff and their property.

21. SUPCO knew, or should have known, that the subject fan would, and did, reach Plaintiff without substantial change in the condition in which originally selected and sold.

22. Plaintiff operated the subject fan without incident in the normal, ordinary and intended matter and purpose at all times prior to July 27, 2020.

23. The fire and damage to Plaintiff's property was caused by and/or resulted from the acts and/or omissions of SUPCO, by and through its agents, servants, employees and/or representatives, acting within the course and scope of

their employment and/or authority for which SUPCO is liable to Plaintiff based upon the theory of strict liability for the following reasons:

a. failing to design, manufacture, inspect, assemble, distribute and/or market a properly functioning and defect-free ventilation fan, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b. failing to properly design, manufacture, inspect, assemble, distribute and/or market the electrical components, such as the motor, motor windings, insulation and other component parts of the motor free from defect;

c. failing to properly determine that the subject fan, including its electrical components, such as the motor, its windings and insulation and other component parts of the motor were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

d. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan, and its component parts were unsafe and unfit for its intended use;

e. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan would be inadequate for the reasons for which it was purchased;

f. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan which had unreasonably dangerous electrical components, including but not limited to its motor, motor windings, insulation and other component parts of the motor that caused the fan to catastrophically fail and/or malfunction;

g. designing, manufacturing, inspecting, assembling, distributing and/or marketing a dangerously defective fan that SUPCO knew or reasonably should have known exposed users, such as Plaintiff to an unreasonable risk of harm;

h. failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the fan, and its component parts, prior to introducing it into the stream of commerce;

i. failing to provide adequate and sufficient warnings and instructions with respect to the subject fan, which rendered it defective and unreasonably dangerous;

j. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain proper safety features to prevent the buildup of lint, dust or other combustible particles in the fan rendering it hazardous and dangerous for its contemplated and intended use;

k. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain a proper motor, rendering it hazardous and dangerous for its contemplated and intended use;

l. designing, manufacturing and distributing a dangerously defective fan, including its component parts, that SUPCO knew or reasonably should have known exposed users, such as Plaintiff to an unreasonable risk of harm because the insulation on the motor windings was subject to degradation allowing the windings to come into contact with one another, creating arcing that ignited combustible materials known to collect in and around the motor;

m. designing, manufacturing, inspecting, assembling, distributing and/or marketing the fan in a defective condition because degradation temperature of the insulation on the motor windings was at or above the ignition temperature of cellulosic material known to collect in and around the motor; and

n. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the insulation on the motor windings would degrade and allow the windings to come into contact with one another.

24. The aforementioned defects or defective conditions existed at the time the subject fan left the possession and/or control of SUPCO.

25. The defective, unreasonably dangerous and unsafe condition of the subject fan as aforesaid was a direct and proximate cause of the damages sustained by Plaintiff.

26. For these reasons, SUPCO is strictly liable to Plaintiff under Section 402A of the Restatement (2d) of Torts, the Restatement (3d) of Torts, and the applicable case law of the State of Georgia.

27. As a direct and proximate result of the aforementioned defects, Plaintiff sustained and incurred damage to its real and personal property, as well as the

imposition of additional expenses and hardship in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $1,000,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT II – NEGLIGENCE

28. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

29. SUPCO owed a duty of reasonable care to Plaintiff in regard to the design, manufacture, assembly, testing, inspection, marketing and distribution, inter alia, of the subject fan, and breached said duty.

30. The aforementioned damages were the direct and proximate result of the negligence and carelessness conduct and/or acts or omissions of SUPCO, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically failing to exercise reasonable care described as follows:

   a. failing to design, manufacture, inspect, assemble, distribute and/or market a properly functioning and defect-free fan, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b. failing to properly design, manufacture, inspect, assemble, distribute and/or market the electrical components, such as the motor windings, winding insulation and other components of the motor free from defect;

c. failing to properly determine that the subject fan, including its electrical components, such as the motor, its windings and insulation, and other components of the motor were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

d. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan was unsafe and unfit for its intended use;

e. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan when it knew or should have known that the subject fan would be inadequate for the reasons for which it was purchased;

f. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan which had was unreasonably dangerous electrical components, including but not limited to its motor, motor windings and insulation and other components of

  the motor that caused the subject fan to catastrophically fail and/or malfunction;

g. designing, manufacturing, inspecting, assembling, distributing and/or marketing a dangerously defective fan that SUPCO knew or reasonably should have known exposed users, such as Plaintiff, to an unreasonable risk of harm;

h. failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the subject fan, and its component parts, prior to introducing it into the stream of commerce;

i. failing to provide adequate and sufficient warnings and instructions with respect to the subject fan, which rendered it defective and unreasonably dangerous;

j. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain proper safety features to prevent the buildup of lint, dust or other combustible particles in the subject fan rendering it hazardous and dangerous for its contemplated and intended use;

k. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the subject fan did not contain a proper motor, rendering it hazardous and dangerous for its contemplated and intended use;

l. designing, manufacturing and distributing a dangerously defective fan, including its component parts, that SUPCO knew or reasonably should have known exposed users, such as Plaintiff, to an unreasonable risk of harm because the insulation on the motor windings was subject to degradation allowing the windings to come into contact with one another, creating arcing that ignited combustible materials known to collect in and around the motor;

m. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because degradation temperature of the insulation on the motor windings was at or above the ignition temperature of cellulosic material known to collect in and around the motor; and

n. designing, manufacturing, inspecting, assembling, distributing and/or marketing the subject fan in a defective condition because the insulation on the motor windings would degrade and allow the windings to come into contact with one another.

31. As a direct and proximate result of SUPCO's aforementioned actions, and/or omissions, SUPCO acted negligently or carelessly, and is therefore liable to the Plaintiff for the damages she suffered.

32. As a direct and proximate result of the aforementioned negligence and careless conduct of SUPCO, Plaintiff sustained and incurred damage to its real and personal property, as well as the imposition of additional expenses and hardship in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $1,000,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTIES

33. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

34. In light of the defects alleged in the preceding counts, SUPCO did not provide product of merchantable quality, reasonably fit for the purposes (general and specific) for which intended, nor one constructed in a good and workmanlike manner – thus breaching express and implied warranties Plaintiff had rights to rely upon, and causing damages to it.

35. Plaintiff used the subject fan in a foreseeable and ordinary manner and yet sustained the damages described herein when the fire occurred due to the defects and unmerchantable qualities thereof; moreover, Plaintiff has and had complied with all duties reasonably imposable upon it in order to recover on this count.

36. As a direct and proximate result of the breach of express and implied warranties, Plaintiff sustained and incurred damage to its real and personal property, as well as the imposition of additional expenses and hardship in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants in an amount in excess of $1,000,000.00, plus costs incident to this suit, delay damages, attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial in this case.

This 31st day of December, 2020.

Respectfully submitted,

2860 Piedmont Road, N.E.  **KEVIN PATRICK LAW, LLC,**
Suite 140
Atlanta, Georgia 30305
404.566.8964 (phone)  BY: /s/ Kevin Patrick
404.565.4995 (facsimile)  Kevin Patrick
kevin@patricktriallaw.com  Georgia Bar No. 225211
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **AMGUARD INSURANCE COMPANY**  <br><br>**Plaintiff(s),**  <br><br>v.  <br><br>**SEALED UNIT PARTS CO., INC.**  <br><br>**Defendant(s).** | **CIVIL ACTION NO:**  <br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) as approved by the Court in Local Rule 5.1(C).

This 31st day of December, 2020.

Respectfully submitted,

2860 Piedmont Road, N.E.
Suite 140
Atlanta, Georgia 30305
404.566.8964 (phone)
404.565.4995 (facsimile)
kevin@patricktriallaw.com

**KEVIN PATRICK LAW, LLC,**

BY:_____
Kevin Patrick
Georgia Bar No. 225211
*Attorney for Plaintiff*