## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **AMGUARD INSURANCE COMPANY** | |
| **Plaintiff,** | **CIVIL ACTION NO: 1:20-cv-05296-TWT** |
| **v.** | |
| **SEALED UNIT PARTS CO., INC.** | |
| **Defendant.** | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, AmGuard Insurance Company, by and through counsel, hereby submits its Memorandum of Law in support of its response in opposition to the Motion for Summary Judgment of Defendant, Sealed Unit Parts Co., Inc. (ECF No. 26).

## I.  INTRODUCTION

At approximately 6 a.m. on a Monday morning on July 27, 2020, a fire broke out in the bathroom ceiling in one of the rooms at the Red Roof Inn in Stonecrest, Georgia. Miraculously, none of the guests were injured even though the event occurred while many slept. Firefighters were able to evacuate everyone, but the building itself was severely damaged.

1

This action seeks recovery for over $2,476,739.74 of property damage caused by the fire. Both parties agree that the fire stemmed from the failure and subsequent overheating of a motor contained within the bathroom ceiling exhaust fan assembly of Room 216. The subject fan assembly (referred to as the "SM550") was sold by the Defendant under its own brand name as a replacement fan assembly which was intended to fit into previously-installed housing made by another manufacturer, Broan Nutone. This allowed the consumer to simply swap out the fan assembly, but keep the wiring and metal enclosure in place.

Defendant advertised, marketed, and sold the product as "UL Listed" and an "exact replacement" for various Broan Nutone products, and appropriate for use in bathroom exhaust fans generally.[1]



---

[1] https://supco.com/web/supco_live/products/SM550.html, last viewed on January 19, 2022 (highlights not in original).

However, the subject motor was very different from the Broan Nutone motor integrated into the fan assembly it was intended to replace. The Defendant's motor was an impedance-protected motor, employing an altogether different design from the Broan Nutone motor. Impedance protected motors are small, fractional horsepower, alternating-current, shaded pole motors which do not employ any type of protective device other than the impedance of the winding to limit motor temperatures. Impedance-protected motors have other uses and applications, but this motor should not have been used as part of a fan assembly in a bathroom.

Unlike the Broan Nutone fan assembly, the subject product was not UL listed for the Defendant's intended use as a bathroom fan, but simply as a component, or stand-alone impedance protected motor. In other words, the component motor itself was UL listed; certifying its conformity with the general safety standards for an impedance protected motor. It was not UL listed, however, as a fan assembly to be used in a humidity-rich environment where it would be left unattended. Such a use and application has a specific standard and listing. The subject motor was UL listed to UL 1004 – Standard for Electric Motors, while the Broan Nutone fan assembly was listed to UL 507 – Standard for Electric Fans.

UL listed electric fans (and consequently their motors) are tested for conformity with UL 507, which tests for safety in applications likely to experience high humidity/moisture and in areas likely to be left unattended – like bathroom

ceiling exhaust fans. Defendant's motor was never tested for compliance with UL 507 and, therefore, has never been listed by UL for use in a bathroom exhaust fan.

Unlike the Broan Nutone fan assembly, the subject motor also did not contain a similar and critical safety feature. It did not have an external thermal protective device that would de-energize the motor if temperatures reached a hazardous condition. But, the Broan Nutone motor did. The thermal protective device served to disable the motor under dangerous conditions like those that existed here.

Defendant's motor also lacked another safety feature; its winding insulation was rated for lower temperatures than the insulation used by the Broan Nutone motors. Thus, the subject motor will achieve hotter temperatures (without the thermal protective device) and the insulation will degrade more quickly when exposed to hotter temperatures.

Instead of the exact replacement fan assembly it promised, the Defendant purchased generic motors from various Chinese suppliers, slapped a fan blade on it, had it sealed in a box with SUPCO stickers and labels, and sold it to the consumer, who thought they were purchasing an American product because of the SUPCO name affixed.

SUPCO testified that its "Sales Engineer" long ago had decided to sell the product as an "exact replacement" of, and appropriate for use in, the Broan Nutone bathroom exhaust fan. As a result, the Defendant began purchasing motors and fan

blades, which were put together in a box. The Defendant sold them as product model SM550. The existence of the multiple foreign suppliers who act on behalf of the Defendant elucidate the Defendant's role in this operation. The assembled product is a combination of components which does not exist until the Defendant puts the parts together.

At its deposition, Defendant ultimately admitted that the product was not an exact replacement for the Broan Nutone product if it lacked an important Broan Nutone safety device despite the previous claims made by its "Sales Engineer" that the product was, in fact, an exact replacement. Nevertheless, Defendant continues to market the product as such while also claiming the SM550 is UL listed. Unlike the Broan Nutone product, the subject product neither possesses the same safety features nor is subject to the same internal or third-party testing and inspection as the Broan Nutone product.

Regardless, Defendant's claim that the SM550 was an "exact replacement" of Broan Nutone bathroom exhaust fan motors is demonstrably false. "Exact replacement" is an industry term used describe an equivalent to the original manufactured product in form, function, way, and result. For the last twenty years, Broan Nutone motors have contained the afore-mentioned thermal protective device.

Finally, the Defendant itself, not the component suppliers, made the decision to integrate the impedance protected motor into the fan assembly and sell it as an

exact replacement for the Broan Nutone product. Defendant did nothing to determine whether the product it sold was actually a replacement for Broan Nutone product, or at a minimum, was safe to be used as a bathroom exhaust fan.  The Chinese suppliers and manufacturers merely sold the Defendant motors which were ostensibly UL listed as compliant to standards meant for electric motors generally. Defendant itself, not the Chinese motor suppliers, determined the intended use and application of the SM550 fan assembly. It is expressly stated on its website.

Had Defendant acted with reasonable care as *either* a manufacturer or distributor of the product, the fire would not have occurred. The subject motor never should have been used in a bathroom fan or it should have had more robust insulation and a thermal protective device. Had it actually been an exact replacement for the Broan Nutone, the fire would not have occurred since the subject motor would have been de-energized when it got too hot. Of course, the Broan Nutone product serves as a representative of the feasible alternative currently on the market and the Defendant's fan assembly fails the risk-utility test. The representations and misrepresentations (and utter lack of warnings on the product itself) offered by Defendant subject it to liability under Plaintiff's negligent failure to warn claims.

As will be more fully described below, Plaintiff's negligence claims are not based solely on the Defendant's role in the distribution chain, but on specific acts or

omissions that caused certain duties to arise. For these reasons, Defendant's motion should be denied as to Plaintiff's negligence claims.

## II.    FACTUAL AND PROCEDURAL HISTORY

On July 27, 2020, a fire caused property damage to a Red Roof Inn located at 5400 Fairington Road in Stonecrest, Georgia. *See* Exhibit A, Sam Shuck Report, at 4. It is undisputed that the fire originated in the bathroom of Room 216 when the motor of the bathroom ceiling exhaust fan failed. *See* Exhibit A, Sam Shuck Report, at 11. The motor failed and ignited nearby combustibles (likely lint) after the insulation on its windings degraded due to an internal overheating event caused by an internal short. *See* Exhibit A, Sam Shuck Report, at 11.

The fan housing was identified as model 678F-E manufactured by Broan Nutone. *See* Exhibit A, Sam Shuck Report, at 7. However, the fan assembly contained within the housing was not original to the Broan Nutone fan, but was an aftermarket replacement. *See* Exhibit A, Sam Shuck Report, at 7. The motor that failed was identified as belonging to a SUPCO brand model SM550[2]; a product that contains a motor and fan blades. *See* Exhibit A, Sam Shuck Report, at 6. SUPCO is the brand of Defendant, an acronym of its name.

---

[2] Certain exhibits may refer to the motor as a model SM 550P2 motor rather than an SM550, however, the SM550P2 is just the model name for a package of two individual SM550 motors. Exhibit B, Anthony Mancuso Dep. Tr., at 12; Exhibit C, Donald Haugh Dep. Tr., at 23.

## A. Defendant assembled, advertised, marketed, sold, and integrated the motor within the fan assembly.

Defendant has sold the SM550 for over a decade and has historically purchased the associated motors from various suppliers in China. *See* Exhibit B, Anthony Mancuso Dep. Tr., at 13-15; Exhibit C, Donald Haugh Dep. Tr., at 15-16. These suppliers purchase the motors from various manufacturers in China – Defendant ultimately does not know who manufactured the subject motor here. *See* Exhibit C, Donald Haugh Dep. Tr., at 91-93.

After receipt of the motors from China, Defendant then packages the motors with separately sourced fan impeller blades, which have their own separate parts number on Defendant's website. *See* Exhibit D, Dr. Elliot Stern Report, at 17, 20, ¶ 67, 83, 87; Exhibit E, Supplier Invoice (showing purchase of generic "electric motor"). Defendant then advertises, markets, and sells the motor and the fan blades together as the SUPCO model SM550 and states, on its website and in various catalogs, that the SUPCO model SM550 is "UL Listed," an "exact replacement" for various Broan Nutone bathroom exhaust fan motors (including model C65878), and appropriate for use in Broan Nutone bathroom exhaust fans generally. *See* Exhibit A, Sam Shuck Report, at 14-15; Exhibit D, Dr. Elliot Stern Report, at 17, ¶ 67.

The motor that failed here was likely manufactured between 2011 and 2013. *See* Exhibit A, Sam Shuck Report, at 16. Defendant has been advertising, marketing, and selling the SUPCO model SM550 this way since at least 2007, *see* Exhibit A,

Sam Shuck Report, at 15; Exhibit D, Dr. Elliot Stern Report, at 17, ¶ 67, and is still doing so today[3].

The Defendant alone was responsible for the intended use and application of the subject product.  It was Defendant's independent business decision to advertise, market, and sell the motor and fan blades together as an "exact replacement" of and appropriate for use in Broan Nutone bathroom exhaust fans. *See* Exhibit C, Donald Haugh Dep. Tr., at 79, 82-83. This decision was made by Defendant's former "Sales Engineer." *See* Exhibit C, Donald Haugh Dep. Tr., at 54-55, 79, 82-83. Defendant currently employs a Quality Control Manager who is tasked with determining whether the model SM550 is an "exact replacement" of and appropriate for use in Broan Nutone bathroom exhaust fans. *See* Exhibit C, Donald Haugh Dep. Tr., at 74-75.

Defendant seals these items in a box with a SUPCO sticker and sends it into the stream of commerce without any warnings or instructions. *See* Exhibit C, Donald Haugh Dep. Tr., at 75-77; *see also* Exhibit F, Photographs of Exemplar SM550 Purchase.

---

[3] https://supco.com/web/supco_live/products/SM550.html, last viewed on January 19, 2022 (highlights not in original).

**B.     The SUPCO model SM550 is not an "exact replacement" of, or appropriate for use in, Broan Nutone bathroom exhaust fans.**

An "exact replacement" is an industry term used to determine if an aftermarket component part is equivalent to the original manufactured component in form, function, way, and result. *See* Exhibit D, Dr. Elliot Stern Report, at 17, ¶ 69-73. The SUPCO model SM550 is not an exact replacement of or appropriate for use in Broan Nutone bathroom exhaust fans in several key aspects.

First, the SUPCO model SM550 motor is an impedance protected motor. *See* Exhibit A, Sam Shuck Report, at 12. Impedance protected motors attempt to prevent overheating by limiting electrical current flowing through its windings to amounts insufficient to generate hazardous temperatures by use of insulation (of various ratings) on the windings. *See* Exhibit A, Sam Shuck Report, at 12. Impedance motors, however, are susceptible to overheating events generated from a short circuit within its windings. *See* Exhibit A, Sam Shuck Report, at 12. The short circuit will degrade the insulation on the windings, destroying the motor's only protection against overheating. *See* Exhibit A, Sam Shuck Report, at 12. An impedance motor will not know if its insulation has been degraded and will continue to run without any warning that is unable to prevent overheating. *See* Exhibit A, Sam Shuck Report, at 13.

In contrast, Broan Nutone bathroom exhaust fan motors contain an additional level of protection against overheating. Broan Nutone motors contain a thermal

protective device. *See* Exhibit A, Sam Shuck Report, at 14; Exhibit D, Dr. Elliot Stern Report, at 18-19, ¶ 78-79. Built in thermal protective devices, such as thermal cutouts, interrupt the flow of current through a motor (i.e. turn it off) if it senses hazardous temperatures. *See* Exhibit A, Sam Shuck Report, at 12. Broan Nutone and its motor component part manufacturers have been using such device in its motors since 2000. *See* Exhibit A, Sam Shuck Report, at 23. Critically, if the subject motor contained a thermal protective device, like Broan Nutone bathroom exhaust fan motors, the fire would not have occurred because it would have shut off before it could have overheated and ignited nearby combustibles. *See* Exhibit A, Sam Shuck Report, at 23. At its deposition, Defendant ultimately admitted that the product was not an exact replacement for the Broan Nutone product because it lacked the thermal protective device. *See* Exhibit C, Donald Haugh Dep. Tr., at 61.

Second, Broan Nutone bathroom exhaust fans typically contain an insulation temperature rating of Class B. *See* Exhibit A, Sam Shuck Report, at 14; Exhibit D, Dr. Elliot Stern Report, at 19, ¶ 79. The SUPCO model SM550 motor contains an insulation temperature rating of Class A – which is lower than Class B. *See* Exhibit A, Sam Shuck Report, at 14; Exhibit D, Dr. Elliot Stern Report, at 19, ¶ 79. This means that the insulation on the windings of Defendant's motor will degrade at lower temperatures than the Broan Nutone. *See* Exhibit A, Sam Shuck Report, at 14; Exhibit D, Dr. Elliot Stern Report, at 19, ¶ 79.

Defendant's advertisement and marketing that the SUPCO model SM550 is UL listed is similarly misleading. The motor of model SM550 is recognized by UL as a having been tested *as a motor*, but not for any specific application within a product. *See* Exhibit A, Sam Shuck Report, at 16-19; Exhibit D, Dr. Elliot Stern Report, at 21, ¶ 83-84. Motors within Broan Nutone bathroom exhaust fans were evaluated specifically for use in fan under UL 507, Standard for Electric Fans.

Importantly, UL 507 standards include tests for fan applications in foreseeably moisture/humidity rich areas – such as bathroom exhaust fans. *See* Exhibit D, Dr. Elliot Stern Report, at 21, ¶ 84. UL 507 also prescribes specific tests for fan applications in an unattended area, which would include application as a bathroom exhaust fan. *See* Exhibit A, Sam Shuck Report, at 19-20. Unattended fans can pose an additional fire hazard because they can overheat if the motor rotors becoming locked and no one is around to discover the issue. *See* Exhibit A, Sam Shuck Report, at 19-20. Without a thermal cutout device, the SUPCO model SM550 motor would likely fail the tests for use in unattended fans. *See* Exhibit A, Sam Shuck Report, at 19-20.

The SUPCO model SM550 motor was never tested for compliance with UL 507 and, therefore, was never evaluated for use in Broan Nutone bathroom exhaust fans specifically or in bathroom exhaust fans in general. *See* Exhibit A, Sam Shuck Report, at 14, 19; Exhibit D, Dr. Elliot Stern Report, at 18-21, ¶ 78-79, 83-84.

### C.    The instant lawsuit and current posture.

Plaintiff insured the Red Roof Inn at the time of the fire and has paid its insured over $2,476,739.74 for damage to real and personal property caused by the fire. Plaintiff, as subrogee of its insured, brought the instant lawsuit against Defendant. Defendant now moves for summary judgment. For the reasons expressed below, Defendant's Motion for Summary Judgment should be denied as to the Plaintiff's negligence claims.

## III.   <u>LEGAL STANDARD</u>

Summary judgment shall be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. lndus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In construing a motion for summary judgement, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).  Additionally, "the evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." *Id.*

## IV.  **LEGAL ARGUMENT**

Defendant's Motion for Summary Judgment should be denied as Plaintiff maintains several viable negligence claims which stem from the breach of duties Defendant owes under Georgia law due to its position as both a manufacturer and a distributor or seller.[4]

Defendant is a manufacturer since it played an active role in the design and assembly of the product, and more specifically, since it assembled component parts and sold the SUPCO model SM550 as a single product for a specific application under its own trade name. Plaintiff presents sufficient evidence that Defendant breached a number of duties owed as a manufacturer, including its failure to act with reasonable care by: (1) selling a product with a design defect, (2) selling a product with a warnings defect, and (3) failing to adequately inspect its product.

Additionally, Plaintiff presents sufficient evidence that Defendant breached a number of duties owed as a distributor/seller, including its failure to act with reasonable care by: (1) negligently misrepresenting that the product was safe to be used as a bathroom fan, was certified by UL to be used as a bathroom fan, and was an exact replacement for a Broan Nutone bathroom exhaust fan, (2) negligently

---

[4] Plaintiff will not pursue the strict liability and breach of warranty claims originally pled in its Complaint.

determining the product was safe to be used as a bathroom fan, was certified by UL to be used as a bathroom fan, and was an exact replacement for a Broan Nutone bathroom exhaust fan, and (3) failing to warn that its product was a fire hazard and lacked adequate safety protections (i.e. thermal cut off and higher-rated wiring insulation) for use in a bathroom exhaust fan application.  As described in more detail below, Defendant breached these duties and caused Plaintiff's injuries.

### A.    Defendant breached duties assumed as a product manufacturer.

Manufacturers assume a number of duties under Georgia law with respect to the sale of their products. Plaintiff has three viable negligence claims stemming from breaches of duties Defendant owed as the manufacturer of the SUPCO model SM550.

Defendant is considered a manufacturer of the motor that failed and caused the fire. Under Georgia law, "manufacturers are those entities that have an active role in the production, design, or assembly of products, not entities that have no real role in the creation of products[.]" *Williams v. Tristar Prod., Inc.*, 418 F. Supp. 3d 1212, 1227 (M.D. Ga. 2019) (quoting *Buchan v. Lawrence Metal Prods., Inc.*, 607 S.E.2d 153 (Ga. App. 2004)). Product sellers can become manufacturers under the law, "by having input or by being actively involved in the conception, design, or specification of the product." *Id.* "To qualify as a manufacturer, an entity must be (a) an actual manufacturer or designer of the product; or (b) a manufacturer of a

component part which failed and caused the plaintiff injury; or (c) an assembler of component parts who then sells the item as a single product under its own trade name." *Holler v. SFCA, Inc.*, No. 1:09-CV-3202-MHS, 2010 WL 11597143, at *2 (N.D. Ga. Feb. 9, 2010) (citations omitted); *see also Tomlinson v. ResQline, Inc.*, No. CIV.A. 204CV122WCO, 2006 WL 1097833, at *4 (N.D. Ga. Apr. 24, 2006); *Freeman v. United Cities Propane Gas of Georgia, Inc.*, 807 F. Supp. 1533, 1539 (M.D. Ga. 1992).

Defendant is a manufacturer in the literal sense, under subsection (c), because it assembled or had assembled generic motors and fan impellers and sold them together as a fan motor assembly for use in Broan Nutone bathroom exhaust fans under its own brand/label. *See* Exhibit D, Dr. Elliot Stern Report, at 17, 20, ¶ 67, 83, 87.

Defendant should also be considered a manufacturer in the broader sense, under subsection (b), because it made an active and specific design decision as to the intended use and specific application of the fan assembly. Indeed, the Defendant did not merely sell an impedance protected motor, but a fan assembly to be installed and used within the housing a Nutone fan.  Plaintiff recognizes that Defendant did not physically manufacture or supply the design drawings for the motor. However, it was Defendant who made the independent decision that the generic motor it purchased from Chinese suppliers could be used and sold as an "exact replacement"

for the fan motors in Broan Nutone bathroom exhaust fans. *See* Exhibit C, Donald Haugh Dep. Tr., at 79, 82-83.

When the Defendant combined the subject motor with fan blades and intended it to be used within a fan housing, it engaged in a design decision. This decision created the dangerous hazard that caused the fire here. The Plaintiff does not take any position with respect to the suitability of the subject motor to be used in other applications or appliances. However, it should be abundantly clear that the bathroom fan assembly was defective when it was integrated with this design of motor. As mentioned above, the motor lacks the much more robust overheating protection of a thermal protective device or higher rated insulation for its windings. *See* Exhibit A, Sam Shuck Report, at 12-14. This lack of more robust overheating protection renders the motor unsafe for use in an area often left unattended, subject to humid conditions, and prone to the accumulation of combustible lint – like a bathroom ceiling exhaust fan. *See* Exhibit A, Sam Shuck Report, at 19-20; Exhibit D, Dr. Elliot Stern Report, at 21, ¶ 84.

Thus, while Defendant is not an actual manufacturer of the motor, it was the only party who exerted any control over or had any input into the design decision that the motor was an "exact replacement" of and appropriate for use in Broan Nutone bathroom exhaust fans. Georgia courts distinguish between manufacturers and sellers in design defect claims because they want to hold the party who made

the decisions that led to the plaintiffs' injuries responsible for those injuries. Under these circumstances, Defendant is the only party responsible for making the decision that caused Plaintiff's injuries – as the original motor manufacturer simply designed and manufactured a generic motor which could, if manufactured properly, meet certain minimum safety standards for stand-alone electric motors.

Defendant cites a number of cases where a "pure" distributor was determined to be a seller rather than a manufacturer under Georgia law. Reliance on these cases is misplaced as Defendant is not a "pure" distributor that simply purchased a product and resold that same product. Instead, it purchased a generic motor and combined it with a fan impeller, deciding that the motor could be integrated within a specific appliance and used for a specific application.

Similarly, Defendant's reliance on *Davenport v. Cummins Alabama, Inc.*, is misplaced, as such case supports Plaintiff's contention that Defendant is a manufacturer. 644 S.E.2d 503 (Ga. App.2007). In *Davenport*, plaintiff filed suit against, among others, the distributor of a motor used in a wood chipper. *Id.* at 506. The distributor had purchased the motor from a manufacturer and sold it to an entity that incorporated the motor into the finished wood chipper. *Id.* at 506. The court in *Davenport* determined the motor distributor was not a manufacturer as it simply resold a motor it purchased. *Id.* at 508. Here, Defendant is actually akin to the entity

that purchased the motor and integrated it into the finished wood chipper. This entity would have been liable as a manufacturer.

Furthermore, the *Davenport* court found that the motor distributor was not a manufacturer because its input had nothing to do with the plaintiff's design defect claim. *Id.* In other words, the plaintiff in *Davenport* did not allege that the motor selection was inappropriate for the wood chipper. In contrast, Defendant's selection of the motor here is clearly part of the Plaintiff's design defect claim.

Accordingly, Defendant is a manufacturer under Georgia law and subject to the duty to sell a product free from design defects.

### i. Defendant breached its duty to design and sell a product free from design defects

Manufacturers of products in Georgia assume a duty to sell a product free from design defects.[5] *See, e.g, Williams*, 418 F. Supp. 3d at 1227 ("Under Georgia law, the maker of an article for sale or use by others must use reasonable care and skill in designing the article so that it is reasonably safe for the purposes for which it is intended and for other uses which are foreseeably probable.").

---

[5] Plaintiff recognizes that, as it is not a "natural person," it cannot maintain an action against Defendant under Georgia's strict liability statute. This, however, does not preclude Plaintiff from pursuing a common law negligence claim based on a design defect. There is little, if any, difference between a design defect claim brought under common law negligence principles and Georgia's strict liability statute, as Georgia courts employ the same standard for both. *See, e.g., Cessna v. Ethicon, Inc.*, No. 7:20-CV-37 (WLS), 2020 WL 2121392, at *8 (M.D. Ga. Apr. 2, 2020).

Plaintiff has produced sufficient evidence to support its claim for the negligent design of the SUPCO model SM550. "To recover on a design defect claim, Plaintiff must show (1) that Defendant's design is defective and (2) that the defective design caused Plaintiff's injuries." *Williams*, 418 F. Supp. 3d at 1227.

Here, Plaintiff has produced expert testimony establishing that the SUPCO model SM550 is defective for application in Broan Nutone bathroom exhaust fans due to, *inter alia*, its lack of a thermal protective device and that the lack of thermal protective devise caused the fire. *See* Exhibit A, Sam Shuck Report, at 23. As such, Plaintiff has satisfied its burden of proof on its negligent design defect claim.

### ii. Defendant breached its duty to design and sell a product free from warnings defects

A manufacturer also had a duty to design and sell a product free from warnings defects.[6] *See, e.g., Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1355 (N.D. Ga. 2008) ("to be liable for failure to warn, the defendant must be a supplier of the product, which includes manufacturers, retailers, sellers, and distributors of the chattel"). "To establish a failure to warn claim, a plaintiff must show that (1) the defendant knew, or had reason to know, that the product is likely to be dangerous for the intended use; (2) the defendant had no reason to believe that the user would

---

[6] Under Georgia law, the standard for negligent failure to warn is the same standard used under Georgia's strict liability statute. *See, e.g., Cessna v. Ethicon, Inc.*, No. 7:20-CV-37 (WLS), 2020 WL 2121392, at *8 (M.D. Ga. Apr. 2, 2020).

realize the danger; and (3) the defendant failed to exercise reasonable care to inform the user about the danger." *Williams*, 418 F. Supp. 3d at 1229 (citation and quotations omitted).

Defendant's Sales Engineer undertook to determine whether the SUPCO model SM550 was an "exact replacement" of and appropriate for use in Broan Nutone bathroom exhaust fans and Defendant currently employs a Quality Control Manager with the same responsibility. *See* Exhibit C, Donald Haugh Dep. Tr., at 54-55, 74-75, 79, 82-83. Thus, Defendant, at least, should have known that the product was not an exact replace of and was not safe for use in Broan Nutone bathroom exhaust fans. Defendant had no reason to believe users of the product would realize the danger.

Defendant failed to exercise reasonable care to inform installers and end users that the SUPCO model SM550 was not an exact replace of and was not safe for use in Broan Nutone bathroom exhaust fans. Similarly, Defendant failed to warn that its product, when used in a bathroom exhaust fan, created an unreasonable fire hazard and lacked sufficient safety mechanisms to prevent a fire. Here, Defendant failed to include any warnings or instructions with the SUPCO model SM550. *See* Exhibit C, Donald Haugh Dep. Tr., at 75-77. As such, Plaintiff has sufficiently presented a negligent failure to warn claim.

iii. **Defendant breached its duty to adequately inspect its product.**

The fan assembly never should have been used in a bathroom or it should have had more robust insulation and a thermal protective device, like the Nutone product. Had it actually been an exact replacement for the Broan Nutone, the fire would not have occurred since the subject motor would have been de-energized when it got too hot. Georgia has long recognized a cause of action for negligent inspection. See Huggins v. Aetna Cas. & Sur. Co., 245 Ga. 248, 264 S.E.2d 191, 192 (1980) (adopting RESTATEMENT (SECOND) OF TORTS § 324A (1965) as Georgia law). In short, the essential elements of negligent inspection are the same as general negligence: the existence of a legal duty; breach of that duty; damages; and a causal connection between the defendant's conduct and the plaintiff's injury. See Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc., 321 Ga.App. 563, 743 S.E.2d 27, 30 (2013) (sitting as a whole court) (applying the general standard to plaintiffs' claim that defendant was negligent in failing to discover an observable defect during its inspection of a vehicle). *Manley v. Ford Motor Co.,* 17 F. Supp. 3d 1375, 1381–82 (N.D. Ga. 2014).

Had the Defendant acted with reasonable care in its inspection, it should have discovered that the product was a) not an exact replacement for the Nutone product, and b) not UL listed for a fan to be used in a bathroom. The Plaintiffs contend that the fire would not have occurred if the fan was an exact replacement for the Nutone product or the fan was not located in the bathroom.

**B.      Defendant breached duties assumed as a product distributor/seller.**

Though differing from those as a manufacturer, the seller of a product also incurs certain common law duties with respect to the sale of their products. Plaintiff maintains three additional negligence claims against Defendant based on the breach of such duties.

**i.      Defendant negligently misrepresented that the product was safe to be used as a bathroom fan, was certified by UL to be used as a bathroom fan, and was an exact replacement for a Broan Nutone bathroom exhaust fan.**

A product seller has a duty to avoid making negligent misrepresentations about its product:[7]

> one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

---

[7] Plaintiff recognizes that this Court has ruled in a prior case stemming from an injury by a product failure that a claim for negligent misrepresentation, at least as against a manufacturer, is collapsed into a failure to warn claim. *See Swicegood*, 543 F. Supp. 2d at 1357. Whether that is the case here is largely academic. Plaintiff has an actionable claim against Defendant for its misrepresentation whether those are construed as species of the negligent failure to warn or negligent misrepresentation.

*Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1356 (N.D. Ga. 2008) (quoting *Benefit Support, Inc. v. Hall County*, 637 S.E.2d 763 (Ga. App. 2006). "The essential elements of negligent misrepresentation are: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *DaimlerChrysler Motors Co., LLC v. Clemente*, 668 S.E.2d 737, 749 (Ga. App. 2008).

Here, Defendant advertised, marketed, and sold the SUPCO model SM550 as safe to be used as a bathroom fan, certified by UL to be used as a bathroom fan, and an exact replacement for a Broan Nutone bathroom exhaust fan. The intent of such advertising and marketing was clearly to have installers purchase and place the SUPCO model SM550 into Broan Nutone bathroom exhaust fans. As shown above, these representations were false. The subject SUPCO model SM550 was installed into a Broan Nutone bathroom exhaust fan by an unknown installer, as intended by Defendant. It is foreseeable that owners of property where such product was installed pursuant to those representations, like Plaintiff's subrogee here, could be injured by a fire that began because of Defendant's false representations.

> ii. **Defendant negligently determined that the product was safe to be used as a bathroom fan, was certified by UL to be used as a bathroom fan, and was an exact replacement for a Broan Nutone bathroom exhaust fan.**

Georgia has long utilized the doctrine of undertaking in recognition of a duty:

> one who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Herrington v. Deloris Gaulden*, 751 S.E.2d 813, 816 (Ga. 2013); *Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga. 1980). Georgia courts have used this doctrine to assign a duty to act with reasonable care to product sellers and distributors for specific actions they have undertaken during the course of their sale and distribution of a product that have injured their customers and/or other foreseeable third parties. *See Boyce v. Gregory Poole Equip. Co.*, 605 S.E.2d 384, 389 (Ga. App. 2004) (product seller who advises on specific use of product must do so with reasonable care); *Blossman Gas Co. v. Williams*, 375 S.E.2d 117, 120 (Ga. App. 1988) (product seller who undertakes voluntary recall must do so with reasonable care); *Beam v. Omark Indus., Inc.*, 237 S.E.2d 607, 610 (Ga. App. 1977) (product seller who provides instructions and warnings to consumer must do so with reasonable care).

Here, Defendant made a design decision in determining that the SUPCO model SM550 was as an "exact replacement" of and appropriate for use in Broan Nutone bathroom exhaust fans. *See* Exhibit C, Donald Haugh Dep. Tr., at 79, 82-83.

This decision was made by Defendant's Sales Engineer and Defendant currently employs a Quality Control Manager with the same responsibility. *See* Exhibit C, Donald Haugh Dep. Tr., at 54-55, 74-75, 79, 82-83.

Accordingly, Defendant was required to make such determination with reasonable care. Defendant breached this duty by failing to determine that the SUPCO model SM550 was not an "exact replacement" of and not appropriate for use in Broan Nutone bathroom exhaust fans. The SUPCO model SM550 was placed into a Broan Nutone bathroom exhaust fan and failed because it was not appropriate for use in such fan. *See* Exhibit A, Sam Shuck Report, at 23. Accordingly, Plaintiff has a viable negligence claim against Defendant for breach of duties assumed by its undertaking.

### iii.     Defendant breached its duty to warn.

Plaintiff has an additional claim based on Defendant's negligent failure to warn. Under the circumstances, this duty exists regardless of whether Defendant is considered a manufacturer or merely a distributor of the product. "Generally, when the seller knows, or should know, the particular use of the product and risks from such use, it has a duty to warn[.]" *Boyce*, 605 S.E.2d at 390. "The seller is required to warn if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the danger." *Bishop v. Farhat*, 489 S.E.2d 323, 328 (Ga. App. 1997) (citations and quotations omitted).

As established above, Defendant's Sales Engineer undertook to determine whether the SUPCO model SM550 was an "exact replacement" of and appropriate for use in Broan Nutone bathroom exhaust fans and Defendant currently employs a Quality Control Manager with the same responsibility. *See* Exhibit C, Donald Haugh Dep. Tr., at 54-55, 74-75, 79, 82-83. Thus, Defendant, at least, should have known that the product was not an exact replace of and was not safe for use in Broan Nutone bathroom exhaust fans. Accordingly, Defendant owed a duty to warn as a seller/distributor of the product.

Defendant failed to exercise reasonable care to inform installers and end users that the SUPCO model SM550 was not an exact replace of and was not safe for use in Broan Nutone bathroom exhaust fans. Similarly, Defendant failed to warn that its product, when used in a bathroom exhaust fan, created an unreasonable fire hazard and lacked sufficient safety mechanisms to prevent a fire. Here, Defendant failed to include any warnings or instructions with the SUPCO model SM550. *See* Exhibit C, Donald Haugh Dep. Tr., at 75-77. As such, Plaintiff has sufficiently presented a negligent failure to warn claim.

## V.   **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**de LUCA LEVINE LLC**

BY:*/s/ Joseph L. McGlynn*
    **JOSEPH L. MCGLYNN**
    Three Valley Square, Suite 220
    Blue Bell, PA 19422
    215-383-0081
    215-383-0082 (fax)
    jmcglynn@delucalevine.com
    ***Admitted Pro Hac Vice***

**KEVIN PATRICK LAW, LLC**

BY:*/s/ Keven Patrick*
    **KEVIN PATRICK**
    Georgia Bar No. 225211
    2860 Piedmont Road, N.E. Suite 140
    Atlanta, GA 30305
    404-566-8964
    404-565-4995
    kevin@patricktriallaw.com

**ATTORNEYS FOR PLAINTIFF**